COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Baker, Benton, Coleman, Elder,
         Bray, Fitzpatrick and Overton
Argued at Richmond, Virginia


DANIEL T. STREET
                                          OPINION BY
v.        Record No. 2363-95-4   CHIEF JUDGE NORMAN K. MOON
                                       AUGUST 12, 1997
JOYAL C. STREET


                    UPON REHEARING EN BANC

           FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    F. Bruce Bach, Judge

         Lee Anne Washington (Chaplin, Papa & Gonet,
         on brief), for appellant.

         Richard J. Byrd (Byrd, Mische, Bevis, Bowen,
         Joseph & O'Connor, P.C., on briefs), for
         appellee.


     Daniel T. Street ("husband") appeals the trial court's

denial of his petition for modification of spousal and child

support.  Husband asserts that the trial court erred in finding

that he failed to prove a change of circumstances that warranted

modification of his support obligation.  A panel of this Court

reversed the trial court's decision, holding that the trial court

erroneously disregarded uncontradicted expert testimony that

husband's mental condition worsened in the months following the

divorce decree, constituting a material change in circumstances

warranting modification of his support obligation.  See Street v.

Street, 24 Va. App. 2, 480 S.E.2d 112 (1997).  We granted Joyal

C. Street ("wife") a rehearing en banc.  We hold that because the

trial court determines a witness' credibility and the weight to

be given an expert's opinion, the trial court, having found husband's conduct suspect, was not required to give any weight to the expert opinion. Accordingly, we hold that the trial court's decision was not plainly wrong, and we affirm.

## FACTS

The parties married in 1969 and had five children, two of whom were dependents at the time of the hearing. During the marriage, husband supported wife and their children by operating a carpet installation business. The business' primary source of revenue was from subcontracts with L & L Carpet Company, a business operated by Eugene Lane, husband's long-time friend. Husband expanded his business in 1990 to include the retail sale of carpeting materials. From 1990 to 1994, husband's business averaged gross revenues of more than $1,000,000 a year and paid husband an annual salary of approximately $76,000. Husband's financial records established that in actual withdrawals, husband withdrew $117,861 in 1993 and $87,419 in 1994 for personal use. Despite the business' substantial revenues, poor record keeping and billing practices resulted in a frequently overdrawn checking account and, by the end of 1994, current liabilities that exceeded current assets by at least $36,000. In addition, by 1995, the business owed federal taxes for 1992, 1993, and 1994, and had borrowed $18,000 from husband's relatives.

The parties separated in December, 1992, and wife filed for divorce in 1993. The trial court held three days of hearings on equitable distribution, spousal support and child support. After

- 2 -

extensive testimony regarding the status of husband's business, including evidence concerning its debts and tax liabilities, the trial court determined that the business had a fair market value of $160,000 and that husband drew a salary of $6,139 per month from his business and an additional $1,500 per month from "side jobs."  In the equitable distribution division, the trial court awarded the business to husband, the marital home to wife.  As to support, the trial court ordered husband to pay $2,300 per month in spousal support and $921 per month in child support.  Husband testified that after hearing the court's decision, that he felt that he could not continue with his business:

> I thought I couldn't continue.  I just felt
> that I couldn't continue the way I was
> continuing.  I knew that I was -- I was
> $14,000 behind in my checking account, and we
> were forcing checks every day almost, and I
> owed a lot of people a lot of money and I
> didn't know how to stop it.  And I knew that
> I was going to be forced to be closed if he
> [Lane] didn't come in and maybe reconstruct
> me or tell me what I was doing wrong or
> something.

The day after the trial court's order, Lane reviewed husband's books and agreed to assist husband, provided husband agreed to follow Lane's directions.  After spending three days assessing husband's business, Lane concluded that the business was beyond salvage and he told husband that the business should be dismantled in an orderly fashion such that none of the employees would be "hurt."  Lane recommended that husband "shouldn't just shut the doors and board it up."  Consequently, husband began the procedure of closing his business.  On June 16,

1995, husband concluded dismantling his business.  Subsequently, husband went to work for Lane at Lane's L & L Carpet business, earning a salary of $625 per week, a reduction in income of approximately sixty percent.

On August 18, 1995, husband filed a petition for modification of spousal and child support, alleging a material change in both his mental health and the condition of his business.  At a modification hearing on September 27, 1995, husband's mental health counselor, Zeena Zeidberg, and his psychologist, Ellen Dixon, testified regarding husband's mental condition.  Ms. Zeidberg stated that she had begun seeing husband in January, 1993, at which time she observed that husband had disorganized, unfocused thought patterns and regularly encountered difficulty maintaining a structured discussion during their appointments.  Based on her observations, Ms. Zeidberg suspected that husband might be suffering from Attention Deficit Disorder (ADD), an involuntary, neurological disorder that impairs a person's ability to process information, a condition that may be exacerbated by stress.  Ms. Zeidberg arranged for husband to take test dosages of the prescription drug Ritalin, beginning in May, 1994, a year before the final support decree was entered.  After husband responded well to the drug, Ms. Zeidberg suggested husband see a clinical psychologist for a complete evaluation.  Husband chose not to pursue a diagnosis at that time but continued taking the test dosages of Ritalin.

Ms. Zeidberg testified that she believed that husband had

suffered from ADD throughout the course of his life and that he had suffered from the untreated disorder during the entire period that he operated his business. She stated that after beginning his treatment, husband's mental condition improved markedly and continued to do so until the time of the final divorce proceedings. She testified that after the final divorce proceedings began, despite the fact that husband was still taking Ritalin, his condition worsened and he appeared to show symptoms of depression as well as ADD.

Dr. Ellen Dixon testified that she consulted with Dr. Eist, a psychiatrist who had seen husband on August 23, 1995, and who had diagnosed him with ADD and chronic depression. Dr. Eist concluded that husband "had this ADD undoubtedly all his life" and that he suffered from severe depression as well as from an anxiety disorder. Dr. Dixon also concluded that husband suffered from ADD and depression and anxiety disorders and testified that because ADD, chronic depression, and anxiety disorder are all neurochemical disorders that affect the neurotransmitter system, "they all make each other worse" when they occur simultaneously. When asked whether specific stresses in husband's life had exacerbated husband's ADD, Dr. Dixon speculated that it was possible but added that "there is a lot I don't know here because I am new in this picture."

Dr. Dixon offered the following opinion regarding husband's counsel's inquiry concerning husband's ability to work:
> Q.   In the two sessions that you have had
>       with Mr. Street, have you been able to

or do you have an opinion of his current ability to make the kinds of decisions that someone managing a business would have to make, the sort of prioritization and discretionary decisions?

A. Yes.

Q. What is your opinion?

A. My opinion on that is there is no way on earth Mr. Street could run a business now, or I suspect ever, or in the past, frankly, effectively work.

The trial court later asked Dr. Dixon if the purported deterioration of husband's mental condition had occurred since May and she stated that she believed that "these behaviors have been with [husband] forever."

At the conclusion of the evidence, the trial court denied husband's petition, finding that husband had voluntarily closed his business and that his psychological problems existed prior to the final divorce hearing. Citing Antonelli v. Antonelli, 242 Va. 152, 409 S.E.2d 117 (1991), the trial court concluded that a modification of husband's support obligations was prohibited as husband's reduction in income resulted from his voluntary closure of his business.

MODIFICATION OF SPOUSAL AND CHILD SUPPORT

"The moving party in a petition for modification of support is required to prove both a material change in circumstances and that this change warrants a modification of support." Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989); Mansfield v. Taylor, 24 Va. App. 108, 114, 480 S.E.2d

752, 755 (1997). The material change "must bear upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay." Hollowell v. Hollowell, 6 Va. App. 417, 419, 369 S.E.2d 451, 452 (1988).

Here, the record established that husband's ADD was not a new condition but, rather, as his psychiatrist testified, was a condition that had "been with [husband] forever." As such, the mere diagnosis and treatment of a condition which existed during the entire period that husband ran his business, the income upon which his support order was based, would be insufficient to sustain a finding of a material change in circumstances. However, the only witnesses who testified about husband's mental condition also opined that the extreme stress husband experienced as a result of the dissolution of his marriage had exacerbated his ADD and caused him to suffer from two new disorders, chronic depression and anxiety. Husband argues that this evidence was sufficient to establish that a material change in his mental condition occurred which warranted a modification of support. Consequently, we decide what weight the trial court was required to give to the testimony of the expert witnesses who presented the only testimony concerning husband's mental condition.

"Under familiar principles we view [the] evidence and all reasonable inferences in the light most favorable to the prevailing party below. Where, as here, the court hears the evidence ore tenus, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without

- 7 -

evidence to support it." Martin v. Pittsylvania Department of Social Services, 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986). It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony. Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986). Further, the fact finder is not required to accept the testimony of an expert witness merely because he or she has qualified as an expert. McLane v. Commonwealth, 202 Va. 197, 205-06, 116 S.E.2d 274, 281 (1960). In determining the weight to be given the testimony of an expert witness, the fact finder may consider the basis for the expert's opinion. Gilbert v. Summers, 240 Va. 155, 393 S.E.2d 213 (1990).

Here, the record establishes that the trial judge, as fact finder, had substantial reason not to be persuaded by Ms. Zeidberg's and Dr. Dixon's conclusions. Within three days of the entry of the final divorce and support decree, husband began the dissolution of a business that had grossed more than $1,000,000 in annual revenues and which had provided husband an income of more than $70,000 in each of the years 1992, 1993, and 1994. Two months after closing the business, husband filed a modification petition asserting that the material change in his mental and business conditions warranted a change in his support obligation.

In support of husband's assertion that a change in his mental condition had occurred, Ms. Zeidberg and Dr. Dixon both testified that husband suffered from ADD. However, both also

- 8 -

testified that husband must have suffered from ADD his entire life and consequently, he suffered from ADD during the entire time that he operated his carpet business. Nevertheless, within days of the trial court's spousal support award, husband began to dissolve his business. Further, Dr. Dixon testified that because of the severity of husband's ADD disorder, "there is no way on earth Mr. Street could run a business now, or I suspect ever . . . ." The accuracy of Dr. Dixon's opinion is belied by the fact that husband did conduct a business from which he generated substantial income for a period of more than seventeen years, while suffering from untreated ADD. Dr. Dixon's diagnosis, which was contradicted by husband's work history, provides substantial reason for the court to reject Dr. Dixon's opinion and to disbelieve husband and the history that he may have provided as the basis for the experts' opinions.

The trial court was also justified in rejecting Ms. Zeidberg's and Dr. Dixon's testimony that the exacerbation of husband's ADD, combined with new disorders, caused his business difficulties. Husband was the sole source of information that formed Ms. Zeidberg's and Dr. Dixon's opinions of husband's mental condition. Both testified that he acted in a fashion consistent with his representation to them that he was suffering severe depression and anxiety as a result of his divorce. However, the record established that husband and wife separated in December, 1992, more than two years prior to the court's final support order and during that period husband continued to run his

business and to enjoy substantial income therefrom. In addition, by the time of the hearing, husband was living with his girlfriend and was working for his friend, Lane, who paid him a salary regardless of whether husband reported for work. In support of his claim that he was not able to work, husband testified that in fact, he did not work very much, and instead stayed at his girlfriend's home and helped get her children off to school.

Further, the evidence shows that in January, 1993, husband began receiving treatment for his problems, including the successful use of Ritalin in May, 1994. Ms. Zeidberg testified that husband had steadily improved while taking Ritalin. Husband stated that he continued to take Ritalin throughout the time of the divorce proceeding. Nevertheless, despite husband's marked improvement for more than a year, his mental condition worsened after the trial court's spousal support order. At that time husband also suddenly decided to seek psychiatric treatment, a course of action recommended to him more than a year earlier by Ms. Zeidberg, which husband had refused to pursue.

Husband's course of conduct provided a basis for the trial court to reject husband's explanation for his reasons for closing his business. The trial court determines a witness' credibility, Bridgeman, 3 Va. App. at 528, 351 S.E.2d at 601, and the weight to give an expert's opinion. Gilbert, 240 Va. at 155, 393 S.E.2d at 213. The trial court was entitled to not believe the husband's explanation concerning his mental condition and that he

was not deriving benefits from his business that Lane had absorbed.  The trial court was not required to believe or to give weight to the expert opinions.  Experts do not determine the credibility of a witness.  See Coppola v. Commonwealth, 220 Va. 243, 251-53, 257 S.E.2d 797, 802-04 (1979).  The trial court did not err in rejecting the husband's testimony and that of his expert witnesses concerning his mental status and its effect upon his ability to have continued to operate his carpet business.

Accordingly, we hold that the trial court's decision was not plainly wrong, and we affirm.

Affirmed.

Elder, J., with whom Benton, J., joins, dissenting.


For the reasons stated in the panel opinion, see Street v. Street, 24 Va. App. 2, 480 S.E.2d 112 (1997), and as stated herein, I would hold that the trial court abused its discretion when it arbitrarily rejected Ms. Zeidberg's unimpeached, uncontradicted, and credible testimony that husband's mental health had changed since the entry of the trial court's awards of child and spousal support. I would remand this case for further proceedings to determine if the change in husband's mental health affected his ability to pay child and spousal support at the level initially ordered.

                                A.

In the portion of its opinion addressing the weight a trial court is required to give to the testimony of expert witnesses, the majority holds that "it is within the fact finder's discretion to accept or reject any of the testimony offered." (Emphasis added). In a line of cases dating back to 1930, the Virginia Supreme Court has repeatedly held that triers of fact do not have carte blanche authority to reject the testimony of witnesses and that their discretion to determine credibility is limited by the boundaries of reason. Typical of this line of cases is Hodge v. American Family Life Assurance Co. of Columbus, in which the Court said:

> While a jury, or a judge trying a case
> without a jury, are the judges of the weight
> of the testimony and the credibility of
> witnesses, they may not arbitrarily disregard

> uncontradicted evidence of unimpeached
> witnesses which is not inherently incredible
> and not inconsistent with the facts appearing
> in the record, even though such witnesses are
> interested in the outcome of the case.

213 Va. 30, 31, 189 S.E.2d 351, 353 (1972) (emphasis added).  Our Supreme Court has applied this doctrine at least twelve times since 1930.  See Cheatham v. Gregory, 227 Va. 1, 4-5, 313 S.E.2d 368, 370 (1984); Chesson v. Commonwealth, 216 Va. 827, 832, 223 S.E.2d 923, 926 (1976); Williams v. Vaughn, 214 Va. 307, 310, 199 S.E.2d 515, 517 (1973); Hodge, 213 Va. at 31, 189 S.E.2d at 353; Presley v. Commonwealth, 185 Va. 261, 266-67, 38 S.E.2d 476, 478 (1946); Worsham v. Commonwealth, 184 Va. 192, 194, 34 S.E.2d 234, 235 (1945); Hamilton v. Commonwealth, 177 Va. 896, 903, 15 S.E.2d 94, 97 (1941); Fairfax v. Commonwealth, 177 Va. 824, 828, 13 S.E.2d 315, 316 (1941); Nelson v. Commonwealth, 168 Va. 742, 747, 191 S.E. 620, 622-23 (1937); Epperson v. DeJarnette, 164 Va. 482, 485-86, 180 S.E. 412, 413 (1935); Hawkins v. Commonwealth, 160 Va. 935, 942, 169 S.E. 558, 560 (1933); Spratley v. Commonwealth, 154 Va. 854, 864, 152 S.E. 362, 365 (1930).

This rule applies equally to the testimony of both lay and expert witnesses.  See McLane v. Commonwealth, 202 Va. 197, 206, 116 S.E.2d 274, 281 (1960) (stating that expert testimony "should be given the same consideration as is given that of any other witness").  Thus, the majority's holding that triers of fact are free to "reject any of the testimony offered" flies in the face of sixty-seven years of our Supreme Court's precedents and

violates the principle that this Court is "bound by decisions of the Supreme Court of Virginia and [is] without authority to overrule them." Tart v. Commonwealth, 17 Va. App. 384, 392, 437 S.E.2d 219, 224 (1993) (citing Roane v. Roane, 12 Va. App. 989, 993, 407 S.E.2d 698, 700 (1991)).

The discretion afforded triers of fact to determine the credibility of witnesses, including experts, is broad but not without limits. Regarding experts, a fact finder is not required to accept the testimony of an expert witness merely because he or she was qualified as an expert. See McLane, 202 Va. at 205-06, 116 S.E.2d at 281. In addition, some expert testimony is not admissible as evidence, including that which concerns matters of common knowledge, such as the veracity of witnesses and that which is speculative. See Coppola v. Commonwealth, 220 Va. 243, 252, 257 S.E.2d 797, 803-04 (1979) (regarding matters within common knowledge); Gilbert v. Summers, 240 Va. 155, 160, 393 S.E.2d 213, 215 (1990) (regarding speculative expert testimony). However, as with all oral testimony, a fact finder may not arbitrarily disregard the uncontradicted testimony of an unimpeached expert witness whose testimony is neither inherently incredible nor inconsistent with facts in the record. See Cheatham, 227 Va. at 4-5, 313 S.E.2d at 370; Spratley, 154 Va. at 864, 152 S.E. at 865.[1]

---

[1] The majority relies on Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986), as authority to support its holding that "[i]t is well established that . . . it is within the fact finder's discretion to accept or reject any of the testimony offered." However, the text of Bridgeman does not

B.

Applying these principles to this case, I would hold that the trial court erred when it concluded that husband's mental health did not change in the weeks following the entry of the trial court's awards of child and spousal support in May, 1995. Specifically, I would hold that the trial court erred when it arbitrarily disregarded the expert testimony of Ms. Zeidberg that husband's mental condition worsened during the summer months of 1995.

Ms. Zeidberg was qualified as an expert "in children and adults with attention deficit disorder." She testified that she began counseling husband in January, 1993 and that she had "met with him 111 times for better than 140 hours of contact." She testified that ADD is an involuntary neurological disorder that

expressly support this proposition and reading it to do so constitutes, in my opinion, an overbroad interpretation of its language. The cited portion of Bridgeman states:

> The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide.

Id. at 528, 351 S.E.2d at 601. This language, which is unsupported by citation to precedent, makes no reference to the line of cases beginning with Spratley in 1930 and concluding with Cheatham in 1984 that qualify a fact finder's discretion to determine the credibility of witnesses by prohibiting the arbitrary rejection of testimony. I do not believe that the panel of this Court that decided Bridgeman intended this language to expand the discretion of fact finders beyond the limits repeatedly set forth by our Supreme Court. Thus, I believe that an accurate interpretation of this language requires it to be read together with, and not contrary to, the Spratley line of cases.

- 15 -

impairs a person's ability to process information and may be exacerbated by stress. She testified that she had long suspected that husband suffered from ADD and that another physician had diagnosed him with both ADD and depression in mid-1995. She testified that she met with husband regularly during the two year period before the hearing on child and spousal support and that husband "seemed to get better." However, after May 18, 1995, the date of the trial court's ruling on these issues, she testified that husband's ADD became exacerbated. She testified that, while meeting with husband during this time, she observed that he was increasingly disorganized and unable to focus on the problems affecting his business.

Nothing in the record supports a finding that Ms. Zeidberg's testimony was inherently incredible, impeached, or contradicted by other facts. First, Ms. Zeidberg's expert testimony regarding the change in husband's mental health was not inherently incredible. The record indicates that it was based on both an accurate understanding of the relevant facts and on a reasonable probability. See Gilbert, 240 Va. at 160, 393 S.E.2d at 215 (stating that an expert's opinion possesses evidential value only if it is not speculative, i.e., if it is "based upon facts within [the expert's] knowledge or established by other evidence"); Clinchfield Coal Co. v. Bowman, 229 Va. 249, 252, 329 S.E.2d 15, 16 (1985) (holding that a doctor's medical opinion was not credible evidence because it was based upon a faulty premise); Spruill v. Commonwealth, 221 Va. 475, 479, 271 S.E.2d 419, 421

(1980) (stating that a medical opinion is speculative if based on a "possibility" and admissible if based on a "reasonable probability"). Ms. Zeidberg's testimony established that her opinion was based upon both her expert knowledge of adults suffering from ADD and her extensive knowledge of husband's case, which she gleaned from meeting with husband regularly over a two and one-half year period. In addition, the manner in which she expressed her opinion indicated that it was based on a reasonable probability and not a mere possibility.

In addition, Ms. Zeidberg's testimony was unimpeached and uncontradicted by other evidence in the record. During his cross-examination of Ms. Zeidberg, wife's counsel did not offer evidence that established that Ms. Zeidberg had either a bad character for veracity or a bias in favor of husband or against wife. Wife's counsel introduced no prior statements by Ms. Zeidberg that were inconsistent with her direct testimony. At the conclusion of husband's case-in-chief, wife's counsel declined to offer any evidence that conflicted with Ms. Zeidberg's account of husband's deteriorating mental condition. In addition, Ms. Zeidberg's testimony was consistent with the other evidence offered by husband. In particular, the testimony of Dr. Dixon, who also testified on husband's behalf, did not contradict Ms. Zeidberg's testimony about the change in husband's mental health. Dr. Dixon corroborated Ms. Zeidberg's testimony that husband suffered from ADD long before he was ordered to pay support. Dr. Dixon's testimony also indicated that she lacked

sufficient knowledge about husband's case to opine whether or not his ADD had worsened since May 18.

Because Ms. Zeidberg's testimony regarding the deterioration of husband's mental condition was unimpeached, uncontradicted, and not inherently incredible, I would hold that the trial court acted arbitrarily when it disregarded her testimony and concluded that husband's mental health had not changed since the entry of its support order.  See Hodge, 213 Va. at 32, 189 S.E.2d at 353 (holding that the trial court's "mere belief or speculation" that husband was lying was not sufficient to disregard his uncontradicted, credible testimony that he did not provoke his wife to shoot him); see also Cheatham, 227 Va. at 4-5, 313 S.E.2d at 370.  I would remand this case to the trial court for proceedings to determine whether the change in husband's mental health warrants the modification of his support obligations.

For the foregoing reasons, I dissent.