## CIRCUIT COURT OF THE CITY OF RICHMOND

Division of Child
Support Enforcement

v.

Timothy J. Levi

Division of Child
Support Enforcement

v.

Alfred Penn

October 31, 1997

Case No. HI-1332-4

BY JUDGE RANDALL G. JOHNSON

In each of these cases, the Division of Child Support Enforcement (DCSE) of the Commonwealth of Virginia's Department of Social Services seeks to impose a child support obligation on a father who is an inmate in the state corrections system. It is DCSE's position that in spite of the fathers' incarceration, the child support guidelines set out in Va. Code § 20-108.2 make such an obligation mandatory. Each father objects to having a support obligation imposed on him, claiming that his incarceration prevents him from earning any income to pay child support. The court holds that no obligation exists.

In making its ruling, the court assumes several facts. First, the court accepts DCSE's proffer that neither father has any physical or mental incapacity that would prevent him from earning at least minimum wage if he

was not in prison.[1] Second, the court assumes without deciding that DCSE's interpretation of Va. Code § 20-108.2(B) is correct and that when neither parent has any income at all there is a presumptive obligation on the non-custodial parent of $65 a month. Section 20-108.2(B) provides, in pertinent part:

> For purposes of application of the guideline, a basic child support obligation shall be computed using the schedule set out below. For combined monthly gross income amounts falling between amounts shown in the schedule, basic child support obligation amounts shall be extrapolated. However, where the combined monthly gross income is less than $599, the presumptive child support obligation shall be $65 per month.[2]

Third, the court assumes, again without deciding, that each of these fathers is voluntarily unemployed within the meaning of Code § 20-108.1(B)(3), thus allowing, or perhaps even requiring, the court to impute income to them. *See L.C.S. v. S.A.S*, 19 Va. App. 709, 718-19, 453 S.E.2d 580 (1995) ("We do not decide whether an incarcerated parent is "voluntarily unemployed" under Code § 20-108.1(B)(3) due to his incarceration because here the known resources of the payor provide an alternate means of computing an award.").

Also in making this ruling, the court recognizes the significant allure and logic of DCSE's position: Defendants voluntarily committed crimes. At the time they committed crimes they knew they would be incarcerated if caught. They also knew that they had children to support and that if they were incarcerated they could not earn money to support them. Thus, they are voluntarily unemployed, should have income imputed to them, and should be assessed an obligation. Indeed, someone must support the children, if not the fathers, then the taxpayers. Why should the fathers avoid responsibility at taxpayer expense when it is the fathers, not the taxpayers, who are responsible

---

[1] Neither father was present at the hearing, and it is their counsel's position that it is improper to accept DCSE's proffer without giving each father an opportunity to show that he cannot earn minimum wage even if he was free. While that argument is probably correct, the court's decision makes it unnecessary to allow such an opportunity.

[2] Actually, this court has previously ruled that DCSE's interpretation of § 20-108.2(B) is not correct. In *Division of Child Support Enforcement v. Davis*, Case No. HI-349-A4 (decided July 2, 1997) [which is printed above at page 88], the court held that where neither parent had income, each parent had 0% of their combined gross income. Thus, each parent's support obligation was 0% times $65, or $0. Again, however, for purposes of these two cases, the court assumes that it was wrong and DCSE is right.

for the fathers' predicaments? While that argument is logical, compelling, and undoubtedly politically appealing, it is simply not realistic.

Virginia's Supreme Court and Court of Appeals have on several occasions imputed income to parents who were found to be voluntarily unemployed or underemployed. In *Antonelli v. Antonelli*, 242 Va. 244, 409 S.E.2d 117 (1991), the Supreme Court held that a father who left a salaried management position at a stock brokerage firm for a commissioned job at another firm just before the stock market "crash" of 1987, resulting in a $10,000 drop in earnings, was voluntarily underemployed and not entitled to a reduction in his child support obligation. In *Street v. Street*, 25 Va. App. 380, 488 S.E.2d 665 (1997), the Court of Appeals rejected a father's claim that he closed his carpet installation business for legitimate business and health reasons and affirmed the trial court's refusal to reduce his child support obligation. *See also Edwards v. Lowry*, 232 Va. 110, 348 S.E.2d (1986) (employee-father fired for theft); *Mansfield v. Taylor*, 24 Va. App. 109, 480 S.E.2d 752 (1997) (father resigning from salaried employment to start own business); *Stubblebine v. Stubblebine*, 22 Va. App. 635, 466 S.E.2d 764 (1996) (64-year-old father retiring from full-time employment). Each of the obligors in those cases, however, and each of the obligors in all of the other cases in which voluntary unemployment or underemployment has been found to exist, enjoyed a very real distinction from the two obligors in the cases at bar. Specifically, whatever reasons existed for those obligors' "voluntary" actions, they had the present ability, at the time those actions were challenged, to at least try to correct them. Thus, the stockbroker in *Antonelli* could have applied for his old salaried position or a salaried position at another firm. The carpet installer in *Street* could have reopened his business. The father in Edwards, though fired for theft, was still a free man able to apply for other jobs. The businessman in *Mansfield* could have closed his business and applied for his old job or another salaried job. And the father in *Stubblebine* could have ended his retirement and gone back into the work force. While there is no guarantee that the efforts of any of those obligors would have been successful, or that they would have made up *all* of the income they lost — for example, the job market for stockbrokers may have crashed as precipitously as the market — at least they were free to try. That is not true for the obligors here.

This court accepts no excuse for the actions of Alfred Penn and Timothy Levi that resulted in their incarceration. Especially when a person has children and a family to support, his or her actions must be such that his or her earning capacity is not jeopardized. Commission of a crime with full knowledge of its consequences is utterly irresponsible. That having been said, however, the court must deal with these situations as they actually exist, not as we want

them to exist. The fathers' situations here do not warrant the assessment of present child support obligations.

Levi and Penn are incarcerated. They cannot work. They have no present earning capacity. While the court assumes that it can, as DCSE suggests, assess an obligation that will cause arrears to accumulate while they are in prison and hopefully be paid when they get out, it just makes no sense to the court to do that. At $65 a month, each of these inmates will accumulate child support arrears of $780 a year for however many years he is in prison. Since arrears become judgments as they are due (Va. Code § 20-6.3(12)), their estates will also be liable for those arrears if the inmates die. For all of this to happen with no assurance that the inmates will be employable *when they are released* is simply wrong.[3] The court will not do it. Instead, the court will hold that each of these inmates, in accordance with the assumptions set out at the beginning of this opinion, has a presumptive monthly child support obligation of $65, but the court will deviate from the guidelines, under the authority set out in Va. Code § 20-108.2(A), to fix his actual monthly obligation at $0.

Finally the court points out that its holding in these cases does not mean that inmates necessarily have a "free ride" when it comes to paying child support. Just as the court has the power to deviate downward from the guidelines now, it will have the power to deviate upward when the inmates are released. In other words, if evidence shows that a released inmate's earning capacity is sufficient to pay support above the guideline amount, DCSE can petition the court to deviate upward from the guidelines to force the released inmate to "make up" for the support that was not paid while he was in prison. While the court cannot guarantee the outcome of such a request, the procedure itself puts no more burden on the taxpayers, and theoretically achieves the same result, as assessing an obligation now and hoping to collect it in the future. More importantly, at least in this court's view, such a procedure better addresses reality.

---

[3] The fact that the inmates presently have no physical or mental impairments to prevent their employment, as DCSE's accepted proffer provides, does not mean that the same situation will be present when they are released.