COURT OF APPEALS OF VIRGINIA


Present:    Judges Kelsey, Petty and Senior Judge Bumgardner


DAVID CHRISTIAN PARKER, SR.

                                                    MEMORANDUM OPINION[*]
v.      Record No. 0999-10-3                        PER CURIAM
                                                    NOVEMBER 9, 2010
HARRISONBURG ROCKINGHAM
  SOCIAL SERVICES DISTRICT


                FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                           Thomas J. Wilson, IV, Judge

            (W. Andrew Harding; Eldridge, Elledge, Evans & Harding, PLC, on
            brief), for appellant.  Appellant submitting on brief.

            (Kimberly Van Horn Gutterman, Assistant County Attorney; Sheila
            R. Keesee, Guardian *ad litem* for the minor child, on brief), for
            appellee.  Appellee and Guardian *ad litem* submitting on brief.


        David Parker, Sr. (father) appeals an order terminating his parental rights to his child.

Father argues that the trial court erred in finding (1) six months of non-contact without cause under

Code § 16.1-283(C)(1) when the only evidence of such was the absence of such a notation in an

incomplete department record; and (2) lack of rehabilitation under Code § 16.1-283(C)(2) when

father was precluded from seeking rehabilitation.  Upon reviewing the record and briefs of the

parties, we find no error, and affirm the decision of the trial court.

                                        BACKGROUND

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On November 2, 2007, the Harrisonburg Rockingham Social Services District (the Department) removed the child from his home and placed him in custody of the Department. Father was not the custodial parent at the time and saw the child only sporadically. The last time that father saw the child was in the summer of 2007. The Department notified father of the removal on November 6, 2007. Father was homeless and unable to take care of the child. After the initial contact, the Department's records reflect that it did not hear from father in 2007 or 2008.

Father stated that he kept in contact with the child's mother. He said that he spoke with the child by telephone during mother's visits. The phone contact stopped in August 2008 when father was incarcerated in New York. His expected release date is August 2011. At the time of the trial, he was in solitary confinement due to disciplinary infractions and had not received any rehabilitative services.

The Department learned of father's incarceration on December 10, 2008 and sent copies of petitions, orders, and foster care plans to father. The Department tried to call father, but was not allowed to speak with him. On February 17, 2009, the Department wrote to father, and asked him to contact them. On April 14, 2009, the Department notified father of its intent to seek the approval of a goal of adoption. Father responded on May 18, 2009 and asked for his family's contact information. On the advice of his attorney, father did not communicate directly with the Department any more. Since that time, father sent two pieces of artwork to the child.

The Department sought termination of parental rights under Code § 16.1-283(C)(1) and 16.1-283(C)(2). The trial court found that the Department met its burden and terminated father's parental rights under Code § 16.1-283(C)(1) and 16.1-283(C)(2). This appeal followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

No contact

Father argues that the trial court erred in finding six months of non-contact without cause under Code § 16.1-283(C)(1) when the only evidence of such was the absence of such a notation in an incomplete department record.

A court may terminate parental rights if:

> [t]he parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

Code § 16.1-283(C)(1).

The Department presented evidence of its records to prove that it did not have any contact with father from November 6, 2007 until early 2009.[1] Father contends the Department's record was incomplete because it did not contain a notation of when father gave artwork to the

---

[1] The social worker who testified at the hearing took over the child's case in August 2009. The trial court ruled that she could testify as to matters that were within the Department's record.

child in the spring of 2009. He asserts that since the social worker at the time did not accurately record contacts with the father, the Department's records were suspect and did not prove that father had no contact with the child for six months.

Father's testimony was conflicting. On direct examination, he stated that he tried to call the Department, and someone would pick up the phone and then hang it up. On cross-examination, he acknowledged that he did not contact the Department between November 6, 2007 and at least January 2009. He testified that he stayed in contact with the child's mother. Father admitted that he did not contact the social worker to try to arrange telephone calls with the child; instead, he said that he spoke with the child when the mother was visiting the child.

The trial court found that father's testimony about calling the Department and being hung up on was not credible. "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*).

The trial court further found that

> from November the 6th, 2007, until August the 27th, 2008, [father] was homeless and I find that he did not contact social services during that time. So we had a period in excess of nine months between the removal and his being incarcerated that there was no contact with the Department of Social Services.

The evidence supports the trial court's ruling. Although the Department contacted father on November 6, 2007 about the child's removal, father did not follow up with the Department. He told the Department that he did not have an address because he was homeless. He did not seek to visit with the child. He did not ask the Department about calling the child. The evidence was sufficient to prove that father did not communicate with the child "on a continuing and planned basis" for more than six months.

- 4 -

<u>Lack of rehabilitation</u>

Father argues that the trial court erred in finding a lack of rehabilitation under Code § 16.1-283(C)(2) when father was precluded from seeking rehabilitation.

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

Code § 16.1-283(C)(2).

Father contends his incarceration affected his ability to seek rehabilitative services. In New York, the Department of Corrections does not offer rehabilitative services until six months prior to the inmate's expected release. Father testified that he was required to participate in a drug program before his release, and he could enter into a vocational program after his release.

At the time of the trial, father was in solitary confinement, and no services are offered to an inmate in solitary confinement.

In its ruling the trial court stated, "At the present time we are dealing with a situation where the father is in solitary confinement on a 23 hour a day lock down in an upstate New York prison almost three years after the removal of the child. . . . At this point in time he has received no rehabilitative services."

Furthermore, the trial court found that the Department's efforts were "reasonable and appropriate" given the totality of the circumstances of this case. The Department sent copies of petitions, orders, and foster care plans to father once the Department knew his location. The Department tried to call him. When the social worker learned that she was not allowed to speak with father, she wrote to him.

The trial court noted, "Of course [father] was in prison out of state and that is not taken issue with. However, I also point to the nine months after the placement when he was not." Prior to his incarceration, father made no efforts to contact the Department and "give the Department an opportunity to provide any services." "The Department is not required 'to force its services upon an unwilling or disinterested parent.'" Logan, 13 Va. App. at 130, 409 S.E.2d at 463-64 (quoting Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986)).

Here, the child had been in foster care since November 2007 and is thriving. The child is doing better in school and is no longer in special education for speech. He is in a potential adoptive home.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Father made no efforts to contact the Department before his incarceration. The Department did not have a chance to provide him with any services. After he was incarcerated, father further hindered his ability to obtain any services by incurring several disciplinary infractions and being transferred to solitary confinement.

The trial court did not err in finding that the evidence was sufficient to terminate father's parental rights under Code § 16.1-283(C)(2).

CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

<u>Affirmed.</u>