UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and Senior Judge Bumgardner

DELJUAN CURRY

MEMORANDUM OPINION*

v.     Record No. 1930-15-2                                         PER CURIAM
                                                                    APRIL 12, 2016

HOPEWELL DEPARTMENT OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
W. Allan Sharrett, Judge

(Brad P. Butterworth, on briefs), for appellant. Appellant
submitting on briefs.

(Joan M. O'Donnell; W. Edward Tomko, III, Guardian *ad litem* for
the minor children; Old Towne Lawyers, LLP; Novey & Tomko, on
brief), for appellee. Appellee and Guardian *ad litem* submitting on
brief.

Deljuan Curry (father) appeals the orders terminating his parental rights to his two children.

Father argues that the trial court erred in terminating his parental rights because (1) there was no

evidence that he abused or neglected one of the children and (2) the evidence was insufficient to

support termination pursuant to Code § 16.1-283(B), (C)(2), and (E)(iv). Upon reviewing the

record and briefs of the parties, we conclude that the trial court did not err. Accordingly, we affirm

the decision of the trial court.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Father and Sharnice Cromartie (mother) are the biological parents to the two children who are the subject of this appeal.[1] The older child was born in September 2013. On December 9, 2013, mother took the child to the pediatrician for a perceived upper respiratory infection. The pediatrician noticed swelling in the child's right leg and recommended he have x-rays at John Randolph Hospital. The x-rays revealed a fracture in the child's tibia. The Hopewell Department of Social Services (the Department) was notified. The child was taken to MCV Hospital for further testing.

Dr. Robin Foster was the attending physician at MCV Hospital. Dr. Foster noticed the swelling in the child's right leg and ordered additional x-rays. Dr. Foster determined that the tibia was fractured two to three weeks earlier. The child also had healed fractures in his right and left clavicle. Dr. Foster estimated that the injuries to the clavicle were approximately four to six weeks old.

Dr. Foster reviewed the child's medical records. There were no indications that the child was injured at birth. At the child's check-ups in September 2013, the pediatrician did not note any swelling or injury to the child's body. On October 14, 2013, mother told the pediatrician about a "bump" on the child's clavicle. The pediatrician referred her to an orthopedist, but the orthopedist never saw the child. On November 10, 2013, the child went to John Randolph Hospital because he had an abscess in the groin area. When the medical staff at John Randolph was unable to insert an IV, the child was transferred to Chippenham Hospital, where he was treated. The notes from both hospitals did not indicate the child's leg was swollen.

---

[1] Mother has four older children. Father is not the biological parent to the four older children.

Dr. Foster concluded, with a reasonable degree of medical certainty, that the child was a victim of physical abuse. The tibia fracture was a non-accidental injury. There was no organic reason for the child's multiple broken bones.

The Department learned that father and mother were the child's primary caregivers. The mother told the Department that the child's clavicles may have been broken during the birthing process. She also stated that the child's tibia may have been broken at John Randolph Hospital when they brought him in for the abscess. However, the medical records do not support these theories.

On January 14, 2014, the Department filed petitions alleging abuse and neglect in the Hopewell Juvenile and Domestic Relations District Court (the JDR court). The Department placed the child in foster care.[2] Since the child has been in foster care, he has not had any broken bones.

The JDR court found that the child was an abused or neglected child. The initial foster care plan required the father to participate in a psychological evaluation, individual counseling, parenting classes, and supervised visitations. He also was required to obtain and maintain housing and employment. Father participated in the psychological evaluation, but not the individual counseling. He participated in the parenting classes and attended most of the visits. He did not obtain independent housing or employment.

In December 2014, mother gave birth to the second child who is the subject of this appeal. The parents did not tell the Department that mother was pregnant or that she had the baby. Once the Department learned that mother had given birth, it obtained an emergency removal order, and the child was placed in foster care.

---

[2] Mother's four older children also were placed in foster care.

The JDR court terminated mother's and father's parental rights to both children and approved the foster care plans with the goal of adoption. Both parents appealed the JDR court's orders to the circuit court. On November 2, 2015, the parties appeared before the circuit court. Father denied harming the child. He testified that the child did not act like he was in pain. Father stated that he told the staff at Chippenham Hospital that he thought the child was injured at John Randolph Hospital. He thought the doctor at Chippenham Hospital who reported that the child did not have any physical problems, other than the abscess, was lying. After hearing all of the evidence and argument, the circuit court entered orders terminating mother's and father's parental rights to the two children pursuant to Code § 16.1-283(B), (C)(2), and (E)(iv). This appeal followed.[3]

ANALYSIS

I.

Father argues that the evidence was insufficient to prove that he harmed or neglected the child.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted).

"It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc) (citation omitted).

---

[3] Mother also appealed the circuit court's orders terminating her parental rights. See Cromartie v. Hopewell Dep't of Soc. Servs., Record No. 1943-15-2.

- 4 -

The circuit court had an opportunity to see and hear all of the witnesses. Father denied harming the child; however, he and the mother were the child's primary caregivers. Dr. Foster testified that the child's broken bones were not accidental. She concluded that the child was a victim of physical child abuse. The pediatrician recommended that the child see an orthopedist after mother said there was a "bump" on the child's clavicle, but the parents did not take the child to the orthopedist. The November 2013 records from John Randolph Hospital and Chippenham Hospital do not indicate that the child had any injuries, other than the abscess. Based on the totality of the evidence, the trial court did not err in concluding that the child's parents harmed him.

II.

Father argues that the trial court erred in terminating his parental rights pursuant to Code § 16.1-283(B), (C)(2), and (E)(iv).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Code § 16.1-283(E)(iv) states that a court may terminate a parent's parental rights if it is in the best interests of the child and there is clear and convincing evidence that "the parent has subjected any child to aggravated circumstances."

Code § 16.1-283(E) defines aggravated circumstances as

> torture, chronic or severe abuse, or chronic or severe sexual abuse, if the victim of such conduct was a child of the parent or a child with whom the parent resided at the time such conduct occurred, including the failure to protect such a child from such conduct, which conduct or failure to protect: (i) evinces a wanton or depraved indifference to human life, or (ii) has resulted in the death of such a child or in serious bodily injury to such a child.

The statute further defines chronic abuse as "recurring acts of physical abuse which place the child's health, safety and well-being at risk." Id. The statute defines serious bodily injury as "bodily injury

that involves substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty." Id.

The circuit court specifically held that the child

> was subjected to aggravated circumstances, as defined in Va. Code § 16.1-283E, while in the care of his parents, . . . in that the child was residing with the parents at the time of his injuries; the severity of the child's injuries includes a failure to protect by the parents; the nature of the injuries resulted in serious bodily injury to such a child.

The evidence supports the trial court's findings. At different times, the child suffered from a fractured tibia and fractured clavicles, while in the parents' care. Dr. Foster determined, with a reasonable degree of medical certainty, that the fractured bones were non-accidental and a result of physical child abuse.

Code § 16.1-283(E)(iv) applies to "any" child who has been subjected to aggravated circumstances. Since the older child was subjected to aggravated circumstances, Code § 16.1-283(E) also applies to the younger child.

The trial court did not err in terminating father's parental rights to his children pursuant to Code § 16.1-283(E).

When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds. See Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not consider whether the trial court erred in terminating father's parental rights pursuant to Code § 16.1-283(B) and (C)(2).

## CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

<u>Affirmed.</u>