COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, AtLee and Senior Judge Clements

SHARNICE CROMARTIE

MEMORANDUM OPINION*

v.      Record No. 1943-15-2                   PER CURIAM
                                               MAY 31, 2016

HOPEWELL DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
W. Allan Sharrett, Judge

(Linda L. Johnson, on brief), for appellant. Appellant submitting on
brief.

(Joan M. O'Donnell; W. Edward Tomko, III, Guardian *ad litem* for
the minor children; Old Towne Lawyers, LLP; Novey & Tomko, on
brief), for appellee. Appellee and Guardian *ad litem* submitting on
brief.

Sharnice Cromartie (mother) appeals the orders terminating her parental rights to her

children. Mother argues that the trial court erred by (1) finding that she subjected the child to

aggravated circumstances of abuse pursuant to Code § 16.1-283(E)(iv); (2) finding that she had not

responded to services and "it was not reasonably likely that the conditions which resulted in the

neglect or abuse could be corrected or eliminated in a reasonable period of time" pursuant to Code

§ 16.1-283(B); (3) failing to award custody of the children to the maternal grandmother or maternal

aunt; and (4) finding that it was in the children's best interests to terminate her parental rights.

Upon reviewing the record and briefs of the parties, we conclude that the trial court did not err.

Accordingly, we affirm the decision of the trial court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

Mother and Deljuan Curry (father) are the biological parents to the two children who are the subject of this appeal.[1] The older child was born in September 2013. On December 9, 2013, mother took the child to the pediatrician for a perceived upper respiratory infection. The pediatrician noticed swelling in the child's right leg and recommended he have x-rays at John Randolph Hospital. The x-rays revealed a fracture in the child's tibia. The Hopewell Department of Social Services (the Department) was notified. The child was taken to MCV Hospital for further testing.

Dr. Robin Foster was the attending physician at MCV Hospital. Dr. Foster noticed the swelling in the child's right leg and ordered additional x-rays. Dr. Foster determined that the tibia was fractured two to three weeks earlier. The child also had healed fractures in his right and left clavicle. Dr. Foster estimated that the injuries to the clavicle were approximately four to six weeks old.

Dr. Foster reviewed the child's medical records. There were no indications that the child was injured at birth. At the child's check-ups in September 2013, the pediatrician did not note any swelling or injury to the child's body. On October 14, 2013, mother told the pediatrician about a "bump" on the child's clavicle. The pediatrician referred her to an orthopedist, but the orthopedist never saw the child. On November 10, 2013, the child went to John Randolph Hospital because he had an abscess in the groin area. When the medical staff at John Randolph

---

[1] Mother also has four older children. Father is not the biological parent to the four older children.

was unable to insert an IV, the child was transferred to Chippenham Hospital, where he was treated. The notes from both hospitals did not indicate the child's leg was swollen.

Dr. Foster concluded, with a reasonable degree of medical certainty, that the child was a victim of physical abuse. The tibia fracture was a non-accidental injury. There was no organic reason for the child's multiple broken bones.

The Department learned that father and mother were the child's primary caregivers. Mother told the Department that the child's clavicles may have been broken during the birthing process. She also stated that the child's tibia may have been broken at John Randolph Hospital when they brought him in for the abscess. However, the medical records do not support these theories.

On January 14, 2014, the Department filed petitions alleging abuse and neglect in the Hopewell Juvenile and Domestic Relations District Court (the JDR court). The Department placed the child in foster care.[2] Since the child has been in foster care, he has not had any broken bones.

The JDR court found that the child was an abused or neglected child. The initial foster care plan required mother to participate in a psychological evaluation, individual counseling, parenting classes, and supervised visitations. She also was required to obtain and maintain housing and employment. Mother completed the psychological evaluation. She started counseling, but stopped after three sessions. She attended all of the scheduled, supervised visits. She maintained full-time employment, and the Department did not have significant concerns about her housing.

In December 2014, mother gave birth to the second child who is the subject of this appeal. The parents did not tell the Department that mother was pregnant or that she had the

_____

[2] Mother's four older children also were placed in foster care.

baby. Once the Department learned that mother had given birth, it obtained an emergency

removal order, and the child was placed in foster care.

The JDR court terminated mother's and father's parental rights to both children and

approved the foster care plans with the goal of adoption. Both parents appealed the JDR court's

orders to the circuit court. On November 2, 2015, the parties appeared before the circuit court.

Mother denied harming the child. She testified that there were mistakes in the child's medical

records and her counseling records. Mother presented evidence that a maternal aunt and the

maternal grandmother were willing to take custody of the children, if the court was not going to

return the children to her. After hearing all of the evidence and argument, the circuit court

entered orders terminating mother's and father's parental rights to the two children pursuant to

Code § 16.1-283(B), (C)(2), and (E)(iv). The trial court found there were no suitable relatives to

take custody of the children, so they remained in the Department's custody. This appeal

followed.[3]

ANALYSIS

I. and IV.

Mother argues that the trial court erred in finding that she subjected the child to

aggravated circumstances and in terminating her parental rights pursuant to Code § 16.1-283(E).

She contends the termination of her parental rights was not in the children's best interests.

When considering termination of parental rights, "the paramount consideration of a trial

court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

---

[3] Father also appealed the circuit court's order terminating his parental rights. See Curry
v. Hopewell Dep't of Soc. Servs., Record No. 1930-15-2 (Va. Ct. App. Apr. 12, 2016).

- 4 -

Code § 16.1-283(E)(iv) states that a court may terminate a parent's parental rights if it is in the best interests of the child and there is clear and convincing evidence that "the parent has subjected any child to aggravated circumstances."

Code § 16.1-283(E) defines aggravated circumstances as

> torture, chronic or severe abuse, or chronic or severe sexual abuse, if the victim of such conduct was a child of the parent or a child with whom the parent resided at the time such conduct occurred, including the failure to protect such a child from such conduct, which conduct or failure to protect: (i) evinces a wanton or depraved indifference to human life, or (ii) has resulted in the death of such a child or in serious bodily injury to such a child.

The statute further defines chronic abuse as "recurring acts of physical abuse which place the child's health, safety and well-being at risk." Id. The statute defines serious bodily injury as "bodily injury that involves substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty." Id.

The circuit court specifically held that the child

> was subjected to aggravated circumstances, as defined in Va. Code § 16.1-283E, while in the care of his parents, . . . in that the child was residing with the parents at the time of his injuries; the severity of the child's injuries includes a failure to protect by the parents; the nature of the injuries resulted in serious bodily injury to such a child.

Code § 16.1-283(E)(iv) applies to "any" child who has been subjected to aggravated circumstances. Since the older child was subjected to aggravated circumstances, Code § 16.1-283(E) also applies to the younger child.

Mother argues that she did not cause the child's injuries, and she sought medical attention when she detected a problem with the child. However, the evidence supports the trial court's findings. At different times, the child suffered from a fractured tibia and fractured clavicles, while in the parents' care. Dr. Foster determined, with a reasonable degree of medical certainty, that the fractured bones were non-accidental and a result of physical child abuse.

- 5 -

The trial court had the opportunity to see and hear the witnesses. It held that the Department's witnesses were more credible than the parents and their witnesses. "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*) (citation omitted).

At the time of the final hearing, the children had been in foster care for approximately twenty-two months. The evidence proved that the children were doing well in foster care. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The trial court did not err in finding that it was in the best interests of the children to terminate mother's parental rights pursuant to Code § 16.1-283(E).

II.

Mother argues that the trial court erred in finding that she had not responded to services and "it was not reasonably likely that the conditions which resulted in the neglect or abuse could be corrected or eliminated in a reasonable period of time" pursuant to Code § 16.1-283(B).

The trial court terminated mother's parental rights pursuant to Code § 16.1-283(B), (C)(2), and (E)(iv). When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds. See Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). As stated above, the trial court did not err in terminating

mother's parental rights pursuant to Code § 16.1-283(E). Therefore, we will not consider whether the trial court erred in terminating mother's parental rights pursuant to Code § 16.1-283(B).

III.

Mother argues that the trial court erred by failing to award custody of the children to the maternal aunt or maternal grandmother. Both testified that they were willing to take care of the children.

Before terminating a parent's rights, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A). The "Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan, 13 Va. App. at 131, 409 S.E.2d at 465.

The maternal grandmother testified that she lived in a two-bedroom house with her seventeen-year-old son and, sometimes, his father. She did not work and relied on her son's father for support. She testified that she currently was not able to take the children. She indicated that she would need approximately three weeks before she could take the children, in order for her to move to a bigger house. The maternal grandmother testified that she saw the children daily prior to their removal. She believed the children were safe in mother's care. She said that she and the mother visit approximately four times per week. The Department expressed concern about the maternal grandmother having custody of the children because she violated a safety plan when she cared for the child in January 2014.

The maternal aunt testified that she lived in a three-bedroom home with her son and daughter. Her plan was for mother's children to share rooms with her children. She works and testified that another sister may help her with the children. She admitted that she received a

referral to child protective services when one of her children wandered away from a family cookout. The police returned the child to her.

The trial court received sufficient evidence to evaluate the maternal aunt and maternal grandmother as possible placements for the children. See Hawthorne v. Smyth Cty. Dep't of Soc. Servs., 33 Va. App. 130, 139, 531 S.E.2d 639, 644 (2000) (although the Department did not investigate a relative, the relative testified at trial, so "the trial court was presented with evidence for its consideration as to the suitability" of placing the child with a relative before it ordered termination of the parent's rights). Based on the record, the trial court did not abuse its discretion in determining that there were no suitable relatives for placement of the children.

CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

Affirmed.