COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Frank and Petty
Argued at Salem, Virginia

EARL F. LAYMAN

v.        Record No. 1891-12-3

DOROTHY J. LAYMAN

OPINION BY
JUDGE LARRY G. ELDER
JUNE 11, 2013

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
James V. Lane, Judge

Danita S. Alt for appellant.

Sherwin John Jacobs for appellee.


Earl F. Layman (husband) appeals the equitable distribution ruling made by the trial court. Husband contends the trial court erred in classifying as marital property the one-half interest in real estate he inherited during his marriage to Dorothy J. Layman (wife).[1] We hold, contrary to the trial court's ruling, that using separate property to secure a loan which is to be used for marital purposes and is subsequently repaid in full using marital funds does not transmute the pledged property into marital property. Accordingly, we reverse the trial court's equitable distribution award and remand for further proceedings consistent with this opinion.

---

[1] Husband also assigns as error the trial court's classifying as marital the remaining one-half interest in the real estate that husband purchased during the marriage. However, husband made no argument and cited no authority in support of this assignment of error. As husband concedes on brief, he "chose not to argue this point in [his] brief." Thus, we do not consider the issue on appeal. See Rule 5A:20(e) (requiring a litigant's opening brief to contain the "standard of review and the argument (including principles of law and authorities) relating to each assignment of error"); Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992) ("Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration.").

I.

BACKGROUND

"We review the evidence in the light most favorable to . . . the party prevailing below and grant all reasonable inferences fairly deducible therefrom." Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). So viewed, the evidence establishes that husband and wife were married in 1952 and separated in 2010. The property that is the subject of this appeal consists of various parcels of real estate that husband acquired from his parents, Jasper and Bertha Layman (Mr. and Mrs. Layman). Mr. and Mrs. Layman purchased the real estate in 1922 and 1932, and they held it as tenants in common. When Mr. Layman died, his one-half interest in the real estate passed to husband under his will (inherited property). In 1956, husband purchased the remaining one-half interest in the real estate from Mrs. Layman (purchased property). The parties do not dispute that the entire property remained titled solely in husband's name.

During the course of the marriage, the parties executed the following five deeds of trust in both their names, each of which was secured by all of the estate, both the inherited and purchased portions:

(1)     1959 deed in the amount of $7,300;

(2)     1969 deed in the amount of $3,346.26;

(3)     1972 deed in the amount of $24,500;

(4)     1976 deed in the amount of $48,000; and

(5)     1992 deed in the amount of $26,500.

Husband testified that the 1959 loan was used to build the parties' marital residence, which the parties stipulated to be marital property. Husband confirmed that the note was paid off using funds from the parties' joint bank account in which husband and wife deposited income

earned during the marriage. The 1972 loan was used to build a chicken house, and that loan was also paid off using marital funds. The 1976 loan was used to build another chicken house. The parties operated these chicken houses for profit and used the income to pay off the notes. The record does not disclose how the parties used the proceeds from the 1969 loan or the 1992 loan.

In a letter opinion dated January 24, 2012, the trial court equitably distributed the parties' marital assets. The only disputed property pertinent to this appeal was the real estate that originally belonged to Mr. and Mrs. Layman, comprising the inherited property and the purchased property. The trial court ruled that the parties paid for Mrs. Layman's one-half interest using marital funds and, therefore, that the purchased property was marital property.[2] Second, the trial court recognized that the inherited property was initially husband's separate property, but it held that property transmuted to marital property when the parties used both the inherited and purchased properties to secure loans that were subsequently repaid using marital funds. The trial court memorialized this ruling in the final decree of divorce. This appeal followed.

II.

ANALYSIS

On appeal, "decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed unless plainly wrong or unsupported by the evidence." McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994). We will reverse the trial court's award of equitable distribution only upon a showing of abuse of discretion. von Raab v. von Raab, 26 Va. App. 239, 246, 494 S.E.2d 156, 159 (1997). "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their

---

[2] Because husband waived his argument relating to the classification of the purchased property, see supra note 1, we do not address that portion of the equitable distribution award.

testimony, and has discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc).

Under Code § 20-107.3(A), the trial court must determine "the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property." Code § 20-107.3(A)(1)(ii) defines "separate property" in pertinent part as "all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party." An increase in value in separate property may be classified as marital property if the non-owning spouse proves "marital property or the personal efforts of either party have contributed to such increases and then only to the extent of the increases in value attributable to such contributions." Code § 20-107.3(A)(1).

The parties agree that the inherited property was presumptively husband's separate property. Further, the parties agree that the loan proceeds that increased the value of the combined real estate—the marital residence and chicken houses—are marital property. Thus, wife argues that the inherited property increased in value by virtue of pledging the property to secure multiple loans, which were repaid using marital funds. Husband argues the trial court erred in classifying the inherited property as marital property because neither the use of that separate property to secure a loan nor the repayment of that loan using marital funds transmuted the pledged property into marital property. Husband points out that he had already established equity in the inherited property, which he acquired from Mr. Layman. In other words, husband argues that paying off the loans did not increase the value of the inherited property.[3]

---

[3] Wife does not contend the inherited property transmuted to marital property under Code § 20-107.3(A)(3)(d), (e) or (f). Therefore, we address only whether the inherited property increased in value and, if so, whether that increase was marital property under Code § 20-107.3(A)(1).

The trial court based its classification of the inherited property on the principle that the "discharge of a debt secured by an asset that results in an increase in equity in the asset constitutes an 'increase in value.'" Gilman v. Gilman, 32 Va. App. 104, 119, 526 S.E.2d 763, 770 (2000) (quoting Code § 20-107.3(A)(1)). Specifically, the trial court found that during the marriage, the parties took out approximately $110,000 in mortgages and loans that were secured by the parties' interests in the purchased and inherited real estate. Because the "evidence before the [c]ourt [wa]s that these mortgages were repaid using marital funds of the parties," the trial court held that "separate and marital portions of the land bec[a]me commingled to an extent that the entirety of the land should be considered marital property." The trial court clarified that it viewed (i) the repayment of the five loans as increasing the value of the inherited property and (ii) the use of marital funds to repay those loans as transmuting that separate property into marital property. We conclude the trial court erred in so holding.

In Gilman, the husband purchased shares of Overnite stock using the proceeds from the sale of his separate property. 32 Va. App. at 109-10, 526 S.E.2d at 765-66. The husband also pledged the Overnite stock as security for a loan to purchase several tracts of real estate that eventually became the primary assets of Dow-Gil, a development company husband formed. In the divorce proceeding, the wife claimed the Overnite stock and Dow-Gil were marital property. We held because the evidence proved that the husband purchased the Overnite stock using the proceeds from the sale of his separate property, the stock was the husband's separate property. Id. at 116, 526 S.E.2d at 769.

In regard to Dow-Gil, we held that the company was presumptively the husband's separate property because it was acquired in exchange for other separate property: the Overnite stock. Id. at 117, 526 S.E.2d at 769. We explained that a stock pledge "compromise[d] the borrower's full ownership rights in an asset in order to use that asset as security for a loan." Id.

at 118, 526 S.E.2d at 770. Thus, "a stock pledge is simply a method to use separate property to acquire additional property," id. at 118-19, 526 S.E.2d at 770, and therefore constituted an "exchange" under Code § 20-107.3(A)(1)(iii). We further rejected the wife's contention that the husband's interest in Dow-Gil transmuted to marital property through the repayment of the loan used to acquire the company's assets in real estate. Although we agreed that the "repayment of the purchase-price loans increased the 'value' of the Dow-Gil land," id. at 119, 526 S.E.2d at 770, we held that wife failed to meet her burden of proof when she "presented no evidence that marital funds were used to pay any portion of the balloon note," id. at 119, 526 S.E.2d at 771.

Here, the trial court misinterpreted our holding in Gilman when it ruled that the inherited property transmuted to marital property. To the contrary, the discharge of an encumbrance using marital funds generates marital equity only in the encumbered property that was acquired using the proceeds of the loan. In Gilman, the repayment of the purchase-price loan affected the classification of Dow-Gil, the acquired property, not the Overnite stock, the pledged property. See id. at 116-17, 526 S.E.2d at 769. The pledge of separate property to secure a loan is simply "a method to use separate property to acquire additional property." Id. at 118-19, 526 S.E.2d at 770. Thus, the classification of the pledged property affects only the initial classification of the acquired property. See Code § 20-107.3(A)(1)(iii) (defining separate property as "all property acquired during the marriage in exchange for or from the proceeds of sale of separate property").

In this case, the inherited property is analogous to the Overnite stock in Gilman, and the proceeds from the five loans are analogous to Dow-Gil. The parties do not dispute that the loan proceeds were used for marital purposes. Therefore, the principle that the "discharge of a debt secured by an asset that results in an increase in equity in the asset constitutes an 'increase in value'" does not apply in this case. Gilman, 32 Va. App. at 119, 526 S.E.2d at 770 (quoting Code § 20-107.3(A)(1)). The trial court's error is manifest because nowhere in Gilman did we

- 6 -

discuss the effect of repaying the balloon note on the classification of the Overnite stock. Even though the parties fully discharged the five loans using marital funds, husband did not gain equity in his inherited property. See 8A Am Jur 2d Bailments § 1 (2d ed. 1993) ("Inherent in the bailment relationship is the requirement that the property be returned to the bailor, or duly accounted for by the bailee, when the purpose of the bailment is accomplished."). Thus, any value added relates to the property acquired using the proceeds from the loans.

To conclude, we hold that using separate property to secure a loan which is used for marital purposes and is subsequently repaid in full using marital funds does not transmute the pledged property into marital property. The only property at issue in this case is the classification of husband's presumptively separate inherited property. Because the discharge of the five loans did not increase the value of the inherited and purchased real estate or commingle marital and separate assets, the trial court erred in finding that the inherited property transmuted to marital property.

## III.

## CONCLUSION

For these reasons, we reverse the trial court's final decree of divorce and remand for further proceedings consistent with this opinion.

Reversed and remanded.