# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Petty, Athey and Senior Judge Clements

SALWA JAFFAR

                                           MEMORANDUM OPINION*

v.     Record No. 1002-20-2                         PER CURIAM
                                                 MAY 11, 2021

CITY OF FREDERICKSBURG DEPARTMENT
  OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

(Matthew Muggeridge; FIDE Law, PLC, on brief), for appellant.
Appellant submitting on brief.

(Robin N. Krueger; Patricia Joshi, Guardian *ad litem* for the minor
children, on brief), for appellee. Appellee and Guardian *ad litem*
submitting on brief.

Salwa Jaffar (mother) appeals the circuit court's orders finding that her three youngest

children were abused or neglected and terminating her parental rights to those children. Mother

argues that the circuit court erred in terminating her parental rights because "it erred in finding the

evidence sufficient to support that the children were abused and neglected." She further asserts that

the circuit court erred in finding that she "had failed to remedy the causes and circumstances that led

the children to come into [foster] care and remain in [foster] care." Lastly, mother contends that the

circuit court erred in finding that termination of her parental rights was in the best interests of the

children. Upon reviewing the record and briefs of the parties, we conclude that the circuit court

did not err. Accordingly, we affirm the decision of the circuit court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Mother and Adnan Saeed (father) are the biological parents to five children; the parents' youngest two daughters and their youngest son are the subject of this appeal.[2] In 2002, mother and father, along with their oldest two children, moved from Iraq to the United States. Mother's and father's youngest three children were born in the United States.

In 2006, after receiving reports of physical neglect and physical abuse, the Fairfax County Child Protective Services "began to have significant contact" with the family and offered them "extensive services."[3] The Fairfax County Department of Family Services remained involved with the family until 2013.

In March 2018, the family was living in Warren County, and the school counselor at the middle school contacted the parents because their youngest daughter, who was in eighth grade, was harming herself and had suicidal ideations. The school counselor recommended counseling

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Mother's and father's two older children are over the age of eighteen. At the time of the circuit court hearing, the parents' youngest three children were seventeen, fifteen, and twelve years old.

[3] The Fairfax County Child Protective Services was involved with father, mother, their children, father's ex-wife, and his children with his ex-wife.

for their daughter.  Three weeks later, the school counselor discovered that the child was continuing to self-harm and was telling her friends that she wanted to kill herself.  The school counselor followed up with the parents and learned that they "were still looking" for a therapist for their daughter.

In June 2018, the youngest daughter again expressed suicidal ideations, so the school counselor tried contacting mother and father.  Because both parents were at work, the school counselor received permission from father to transport the child to the hospital for an evaluation.  Later that night, mother and father came to the hospital as the child was being transported to a different hospital under an emergency custody order.  The next day, mother tried to convince the school counselor that the child was not suicidal and did not cut herself.  The child saw a therapist three times, but when the therapist suggested psychotropic medication, mother removed the child from therapy.

On May 3, 2019, the City of Fredericksburg Department of Social Services (the Department) received a report that the youngest daughter, who was fourteen years old at the time, had attempted to hang herself in the bathroom at school.  Mother denied the reports and insisted that the marks on the child's neck were "due to sugaring, a form of waxing."  Mother also claimed that the scars on the child's arms were "from sugaring," and not from self-harm.  Mother stated that the child's behavior was "only for attention" and that she did not have any mental health concerns.  Mother reluctantly entered into a safety plan and agreed to refrain from abusing the children emotionally, verbally, and physically.

Later that evening, the Department confronted mother after learning that she already had broken the safety plan.  Mother agreed to place the girls with someone who could care for the girls temporarily.  Mother and father agreed to supervised visitation with the girls.  The

Department allowed the parents' youngest son to remain in the home, so long as mother agreed to refrain from "all forms of verbal, emotional, physical, and mental abuse."

A few days later, the youngest daughter was hospitalized again for suicidal ideations. Afterwards, mother and father entered into another safety plan and agreed to refrain from contacting their daughters and abusing their youngest son.

The Department subsequently learned that mother had been verbally abusing the children daily and physically abusing them "at least once a week or more." The children reported that mother threw items at them, pulled their hair, punched them, kicked them, and cursed at them. The Department observed bruises on the older daughter's arm.

On May 28, 2019, the Department received a report alleging that mother had sexually abused her youngest son, who was eleven years old at the time.[4] The Department met with the parents and informed them that the youngest son could not remain in the house with mother. Father and the youngest son agreed to leave the home. After a couple of weeks, father reported that he intended to return home to mother with the children because "it was causing problems for him." Father claimed that everything was "okay" at home and that the children were safe in the home.

Based on the family's extensive history with child protective services, the parents' failure to comply with the safety plans and services, and the parents' inability to comprehend how their actions affected the children, the Department removed the three children from their care and placed them in foster care on June 13, 2019. After the children's removal, father and mother resumed living together. The Department's investigation and observations led to mother's subsequent arrest on three charges of assault and battery, one misdemeanor charge of

---

[4] The allegations of sexual abuse were unfounded.

contributing to the delinquency of a minor, and a felony charge of child abuse/neglect causing serious injury.[5]

The Fredericksburg Juvenile and Domestic Relations District Court (the JDR court) subsequently adjudicated that the three children were abused or neglected and entered dispositional orders. Mother and father appealed the dispositional orders.

Meanwhile, the Department referred mother and father to Family Solutions for a reunification assessment. On November 20, 2019, the evaluator at Family Solutions issued her report after investigating the situation and meeting with the parents. The evaluator opined that the prognosis for successful reunification was "[e]xtremely poor." The evaluator noted that "both parents adamantly denied any form of abuse or neglect" and "rated their parenting performance as superior." The evaluator, however, found that "mother's harsh and cruel treatment of all of the children reflect[ed] a pattern of pervasive physical and emotional abuse. The father's failure to protect [was] equally damaging." The evaluator noted that mother demonstrated "a lack of awareness and accountability" and "struggle[d]" to comply with the rules and directives. The evaluator emphasized that the youngest daughter had five inpatient psychiatric hospitalizations, yet the parents failed to understand the severity of the situation.

The Department retained Dr. Leigh Hagen, an expert in forensic psychology, to "offer some professional opinions and guidance" with the family. Dr. Hagen reviewed the record, met with the parents, and prepared a report. Dr. Hagen opined that there was "insufficient evidence of sustained and reliable improvement in parenting performance or family functioning since 2006." Dr. Hagen found that the various social services departments involved with the family

---

[5] The Fredericksburg Juvenile and Domestic Relations District Court (the JDR court) found that the facts were sufficient to find mother guilty of one count of assault and battery, but it deferred disposition. The Commonwealth *nolle prosequied* the misdemeanor charge of contributing to the delinquency of a minor, the felony charge of child abuse/neglect, and one count of assault and battery. The JDR court acquitted mother of one count of assault and battery.

had "made sufficient effort to rehabilitate the parents by any reasonable means to remedy the circumstances in place prior to the child's initial placement in foster care." He did not believe that "other reasonable services would produce an appreciable result in remedying the circumstances in place prior to the child's initial placement." Dr. Hagen concluded that father and mother were "not in a position to safely parent any of these children."

The Department had ongoing concerns about the parents' ability to care for the children's mental health needs and protect them from further abuse or neglect. On January 27, 2020, the JDR court approved the foster care goal of adoption for the three children and terminated mother's and father's parental rights. Mother and father appealed to the circuit court.

On August 18, 2020, the parties appeared before the circuit court for a hearing on the consolidated appeals from the JDR court. The social worker testified that mother and father still had not developed any insight into the needs of the children. Mother and father repeatedly had told the social worker that the children did not need mental health treatment and that their daughters were just seeking attention. Furthermore, the social worker expressed concern that mother and father had not accepted their roles in the situation and their children's placement in foster care. Mother and father insisted that they were "excellent" parents.

The Department presented evidence that neither one of the girls wanted to visit mother and had not done so, but the girls had had "some visits" with father. The youngest son regularly visited father "via Zoom," but had no visits with mother. All three children were participating in therapy.

At the conclusion of the Department's evidence, mother moved to strike, which the circuit court denied. Mother testified that she had attempted to find a counselor for her youngest daughter after her suicide attempt in June 2018, and that when she found a counselor, she stopped the counseling after three sessions because she did not agree to medicating the child.

Mother explained that after their move to Fredericksburg in August 2018, the child told her that she did not need to see a counselor or doctor, and mother did not see any problems; therefore, mother did not seek mental health treatment for the child.

Mother testified that she wanted the children returned to her care. She denied physically abusing the children. She expressed her love for them and agreed to "never discipline them physically" if they were returned to her care. She claimed to have changed "a lot" since June 2019 because now she was "more responsible" and thought more about the children and their needs.

The circuit court spoke with the parents' daughters, who were fifteen and seventeen years old, *in camera*.[6] The girls wanted to be adopted and did not object to the termination of their parents' parental rights.

At the conclusion of all the evidence, mother renewed her motion to strike, which the circuit court denied. The circuit court found that the children were abused or neglected and that it was in the children's best interests to terminate mother's parental rights under Code § 16.1-283(C)(2).[7] This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be

---

[6] The youngest son was twelve years old and did not speak with the judge.

[7] The circuit court also terminated father's parental rights, and he appealed the circuit court's rulings. See Saeed v. City of Fredericksburg Dep't of Soc. Servs., Record No. 1292-20-2.

disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

*Abuse and neglect*

Mother challenges the circuit court's finding that the children were abused or neglected.

An abused or neglected child is defined as a child

> Whose parents or other person responsible for his [or her] care creates or inflicts, threatens to create or inflict, or allows to be created or inflicted upon such child a physical or mental injury by other than accidental means, or creates a substantial risk of death, disfigurement or impairment of bodily or mental functions . . . .

Code § 16.1-228(1). "[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child." D. Farrell v. Warren Cnty. Dep't of Soc. Servs., 59 Va. App. 342, 364 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1183 (1991)). Proof by a preponderance of the evidence is the appropriate standard for abuse and neglect cases. See Cumbo v. Dickenson Cnty. Dep't of Soc. Servs., 62 Va. App. 124, 130 (2013).

The circuit court found that the family had "a long-standing toxic household that included violence and verbal, physical and emotional abuse." The Department presented evidence that mother had verbally, emotionally, and physically abused all three children; her abuse included kicking the children, hitting the children, throwing objects at them, yelling at them, and pulling their hair. The JDR court found that the facts were sufficient to convict mother of assault and battery against the older daughter. The younger daughter had attempted suicide multiple times, yet mother insisted that the child was just seeking attention and did not need mental health treatment.

The circuit court rejected mother's testimony that she did not abuse the children and found the Department's evidence to be credible. "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has discretion to accept or reject any of the witness' testimony." Layman v. Layman, 62 Va. App. 134, 137 (2013) (quoting Street v. Street, 25 Va. App. 380, 387 (1997) (*en banc*)). "This Court is bound by the credibility findings of the circuit court." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 339 (2013).

Based on the totality of the record, the circuit court did not err in finding that a preponderance of the evidence proved that mother abused or neglected the children.

*Termination of parental rights*

Mother argues that the circuit court erred in finding that the evidence was sufficient to terminate her parental rights under Code § 16.1-283(C)(2) and that termination was in the children's best interests. She contends that she had remedied the conditions that led to the children's placement in foster care. She emphasizes that she participated in the required services and had changed since the children entered foster care. She further challenges the methods used by the evaluator for the Family Reunification Assessment and any reliance on the report.

Code § 16.1-283(C)(2) states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the

parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

The family had been involved with social services since 2006 and had received "extensive services" over the years; nevertheless, mother's abuse toward the children continued. The Department presented evidence of the ongoing abuse, which eventually led to the youngest daughter attempting suicide several times and criminal charges against mother. Throughout the duration of the Department's involvement, mother denied abusing the children and never understood how her actions affected them. Mother claimed that mental health treatment was not necessary for herself or the children.

The Department attempted to provide services to the parents and referred them for a family reunification assessment. The evaluator testified as an expert in family reunification without objection. Mother argues that the questionnaire she filled out at a meeting with Family Solutions was flawed, so the Department failed to meet its burden. The evaluator's opinion, however, was based on more than the questionnaire, such as her interviews with the parents and children, her consultations with other mental health professionals and social workers, and her review of the Department's records, the court's records, medical records, and the CASA report. After reviewing and consulting with all the sources, the evaluator opined that the prognosis for reunification was "[e]xtremely poor." Dr. Hagen, an expert in forensic psychology, independently reviewed the materials and interviewed the parents. He also opined that reunification efforts would be futile and found that the children would not be safe with mother.

Although mother testified that she had changed as a parent since the children entered foster care, she continued to deny the abuse and her role in the children's placement in foster care. Mother dismissed testimony about her abusing the children as "a story." The evidence,

however, supports the circuit court's finding that the abuse was "long-standing and pervasive" in their family.

At the time of the circuit court hearing, the family had been involved with social services for approximately fourteen years. The Department remained concerned about the children's safety and prevented mother from contacting or visiting them while they were in foster care. At the time of the circuit court hearing, mother was not in a position to visit the children, much less to resume custody of the children. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett, 62 Va. App. at 322 (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Based on the totality of the circumstances, the circuit court did not err in terminating mother's parental rights and finding that termination was in the children's best interests.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.