UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, White and Retired Judge Frank[*]

LORETTA LYNN CARR

v.      Record No. 1186-22-2

BUCKINGHAM COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION[**]
PER CURIAM
APRIL 11, 2023

FROM THE CIRCUIT COURT OF BUCKINGHAM COUNTY
Donald C. Blessing, Judge

(M. Kevin Bailey; M. Kevin Bailey, PLLC, on brief), for appellant.
Appellant submitting on brief.

(E. M. Wright, Jr.; M. Brooke Teefey, Guardian ad litem for the
minor child; Teefey Law, P.C., on brief), for appellee. Appellee and
Guardian ad litem submitting on brief.

Loretta Lynn Carr (mother) appeals the circuit court's orders terminating her parental rights

and approving the foster care goal of adoption. Mother argues that the circuit court erred in finding

that the termination of her parental rights was in the child's best interests and that clear and

convincing evidence supported the termination of her parental rights under Code § 16.1-283(B),

(E)(i), and (E)(iv). After reviewing the record and briefs of the parties, we conclude that the

circuit court did not err. Accordingly, we affirm the circuit court's judgment.

---

[*] Retired Judge Frank took part in the consideration of this case by designation pursuant to
Code § 17.1-400(D).

[**] This opinion is not designated for publication. *See* Code § 17.1-413.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)). Here, the Department was the prevailing party.

Mother and Martin Maurice Yates ("father") are the biological parents to the child who is the subject of this appeal.[2] The child was born prematurely in March 2021 and spent the first "59 to 69" days in the hospital. The Infant & Toddler Connection ("I&TC") provided early intervention services to the family, including physical and speech therapy to the child.

In early November 2021, a therapist saw a burn mark on the then-seven-month-old child's right lower back. The child's grandmother told the therapist that the child had rolled into a space heater in father's office in the "shed building" where he lived[3]; however, I&TC had documented that the child needed assistance to roll over. The grandmother also told the therapist that a doctor had seen the wound and prescribed medicine.[4]

In addition to noting the child's burns, the therapist documented the living conditions of mother's home. Her house had fleas, which prevented the therapist from working with the child on

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues mother has raised. "To the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] Father also appealed the circuit court's orders terminating his parental rights and approving the foster care goal of adoption. *See Yates v. Buckingham Cnty. Dep't of Soc. Servs.*, Record No. 1206-22-2.

[3] The shed was on the same property as mother's house.

[4] When asked about the prescription, the grandmother showed the therapist an "empty tube of Vaseline"; she also said that there was a "cream," but she did not know where it was.

the floor. The therapist worked with the child in father's shed once in November 2021. The therapist noted that there were bees and ladybugs that "continuously needed to be swatted away" while she worked with the child.

In early December 2021, mother took the child to the pediatrician for a "regularly scheduled appointment." The pediatrician noticed a "healing burn" on the child's buttocks and lower back and sent the child to the hospital for treatment. The hospital personnel determined that the child had burn marks in "various stages of healing" on her back, hip, and buttocks, as well as a subdural hematoma.

According to medical personnel, the child's injuries were "not fresh" and "not consistent" with diaper rash as mother claimed. The doctors suspected that the child was physically abused because she could not "crawl over to something hot and burn herself accidentally," and the location of the burn was in "an atypical location for an accidental burn." After receiving conflicting reports about the causes of the injuries and hearing mother's threats to leave, the hospital reported the incident to the Buckingham County Department of Social Services (the Department).

The Department spoke with mother and convinced her to allow the hospital to conduct additional tests. Mother initially told the hospital personnel and the Department that she and father did not own a space heater and the child's injuries were a result of diaper rash. She next reported that an uncle used a "diaper brand that burned [the] child around Thanksgiving." Then, she claimed that a diaper that she placed on the child caused a "chemical burn." Next, she blamed father and her brother for the child's burns, and then she said that father burned the child recently and assaulted her. Finally, she told the Department that she was in jail when the child was burned.

In addition to the burns, the hospital documented its concerns that the child was developmentally delayed and underweight. Although the child was eight months old, she functioned developmentally as a two or three month old. The child was "unable to hold herself

upright, unable to hold her head up, unable to crawl, unable to roll both ways, and the back of her head was extremely flat." In addition, the child's weight was fluctuating and was in the third percentile for her age.

During its investigation, the Department discovered that child protective services from several localities had been involved with one or both parents since 2006. Father had three children from a previous relationship, and mother had five children from a previous relationship. Together, father and mother had four children, including the child who is the subject of this appeal.[5] The parents did not have custody of any of their children. Mother's parental rights had been involuntarily terminated for two children and voluntarily terminated for one child.

Considering the parents' history with child protective services, the severity of the child's injuries, the parents' inability to explain how the injury occurred, the child's developmental delays, and the lack of viable relative placement options, the Department petitioned for removal of the child. The Buckingham County Juvenile and Domestic Relations District Court ("the JDR court") granted the Department's petition and entered emergency and preliminary removal orders. The JDR court subsequently adjudicated that the child was abused or neglected and prohibited the parents from having any contact with her. On February 15, 2022, the JDR court terminated mother's parental rights and approved the foster care goal of adoption. Mother appealed the JDR court's rulings to the circuit court. After the JDR court hearing, the Department made a disposition of "Founded, level 1 for medical neglect" against mother.[6]

---

[5] One of the parents' children died at 25 days old of Sudden Infant Death Syndrome (SIDS).

[6] The Department determined the allegations of physical abuse were "unfounded" against mother.

At the circuit court hearing, the Department presented evidence, including photographs, of the child's burns. Dr. Jennifer Andrews, an expert in child abuse who saw the child in the emergency room in December 2021, testified that her injuries were burns. Dr. Andrews noted that the burns were "irregular" in shape and located in an area that clothing or diapers typically protect. Further, because the child was "not independently mobile," she could not have sustained the burns on her own; therefore, Dr. Andrews opined that "the absence of a history of burn [was] indicative of physical abuse." In addition, the location of the burns "on two separate planes," her left buttock and her right lower back and right hip, suggested that she was burned twice. Dr. Andrews testified that the burns the child sustained would have caused her "a lot of pain."

Dr. Andrews recalled that the parents presented conflicting accounts of the child's injuries. Father reported that the child had been burned and had received medical treatment, but mother denied that the child's injuries were burns. Mother claimed the child had diaper rash. Considering the conflicting stories about whether the child had received medical treatment, Dr. Andrews opined that it was "medically indeterminate" whether the child had been medically neglected. Nonetheless, the burns suggested that the child had been physically abused.

In addition to the burns, medical providers were concerned about the child's development. Dr. Andrews opined that the child suffered from nutritional neglect because the child was "small," but made "improvements in her growth" after being placed in foster care, suggesting that she was not eating enough before her hospitalization. At a follow-up appointment two weeks after the December hospital visit, the child's burns were healing, and she had gained a "substantial amount" of weight. The child also "had made over a month of advancement with her development." At the time of the circuit court hearing, the child was "thriving" in foster care; she was walking, climbing, talking, and holding a cup.

At trial, mother explained that she primarily cared for the child during the day, while other relatives cared for the child at night and on the weekends. In November 2021, however, mother was incarcerated for "15 days straight" and then reported for weekends.[7] While mother was incarcerated, father had cared for the child. At some point, he placed the child's pack and play in the shed with him, even though he was not supposed to take the child from mother's home.

Father admitted to accidentally burning the child with the space heater in his office. He acknowledged that he had not taken her to the hospital immediately because he was worried that she "could be taken away." Father claimed that he fell asleep, and the child, who was in a pack and play, rolled too close to the heater. When he awoke the next morning, he noticed that she had been burned.

Mother recalled discovering the burns after she returned home. She allegedly scheduled a telehealth appointment for the child but admitted that she initially thought the mark was diaper rash. She claimed that she "found out during the telemed visit" that father burned the child. Mother and father testified that the telehealth provider gave mother a prescription for the burns, and mother took the child to a follow-up appointment with a pediatrician in December 2021. Mother testified that she told Dr. Andrews at the hospital that the child had diaper rash *and* a burn.

Mother admitted that she sometimes was responsible for feeding the child but claimed that other relatives also fed the child. According to mother, the child had experienced "problems gaining weight ever since she was born."[8] Mother explained that doctors had been "monitoring" the child's weight and told her to "fortify her formula" by adding "vitamin drops . . . and a bunch of

---

[7] Mother had been convicted for "a driving charge and fighting charge" and received a 30-day active sentence.

[8] Father claimed that the child was "healthy," "doing pushups," and had "only lost a little bit of weight."

other supplements to help her gain weight," which mother said she did.  She did not believe that she had neglected the child.

After hearing all the evidence and arguments, the circuit court found "a lot of confusion" and "contradiction" in the parents' testimony.  Noting the contradiction concerning the child's ability to roll over on her own, the circuit court questioned why anyone would place a portable heater so close to such a young child if she could have rolled over and burned herself.  The circuit court voiced concern upon viewing the  photographs stating they showed "a horrible looking blister that's probably going to be a disfigurement."  After finding that father had "an inadequate home setting and the mother doesn't seem to have much better," the circuit court also found that the child's "lack of nourishment" contributed to her "lack of development."  Considering the "burns, apparent neglect, [and] lack of nourishment," the circuit court found that it was in the child's best interests to terminate mother's parental rights.  In addition, the circuit court noted that mother's parental rights had been involuntarily terminated to two of the child's siblings.  The circuit court then terminated mother's parental rights under Code § 16.1-283(B), (E)(i), and (E)(iv) and approved the foster care goal of adoption.  Mother appeals.

## ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'"  *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)).  "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

Mother challenges the circuit court's termination of her parental rights. The circuit court terminated mother's parental rights on multiple grounds, including Code § 16.1-283(E)(i). That statute provides that parental rights may be terminated "if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that (i) the residual parental rights of the parent regarding a sibling of the child have previously been involuntarily terminated . . . ." Code § 16.1-283(E)(i). There is no dispute that mother's parental rights to two other children had been terminated involuntarily.

Mother argues, however, that it was not in the child's best interests to terminate her parental rights. She emphasizes that she did not cause the conditions leading to the removal because father had taken responsibility for accidentally burning the child. Mother also stresses that she arranged a telehealth appointment in November and took the child to a pediatrician and the hospital in December.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." *Castillo*, 68 Va. App. at 558 (quoting *Logan*, 13 Va. App. at 128). The circuit court is "vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." *Id.* (quoting *Logan*, 13 Va. App. at 128).

The Department presented evidence that the child had been burned twice. The shape and location of the burns, along with the child's lack of "independent[] mobil[ity]," suggested physical abuse. Mother presented conflicting stories about how the child was burned. Initially, mother reported to the hospital and the Department that the injuries were a result of diaper rash, but her story changed to the injuries occurring because of a reaction to a diaper and then because father burned the child. At the circuit court hearing, mother claimed that she realized in November that father had burned the child, yet she told the hospital in December that the child had diaper rash and

a burn. The circuit court did not credit mother's testimony. "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has discretion to accept or reject any of the witness' testimony." *Layman v. Layman*, 62 Va. App. 134, 137 (2013) (quoting *Street v. Street*, 25 Va. App. 380, 387 (1997) (en banc)). "This Court is bound by the credibility findings of the circuit court." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 339 (2013).

Moreover, the Department presented evidence that the child was underweight and developmentally delayed when she entered foster care. Within two weeks of her foster care placement, she had gained "a substantial amount" of weight and progressed developmentally. At the time of the circuit court hearing, the guardian ad litem reported that the child was "thriving" in foster care.

The circuit court considered the totality of the evidence, including photographs of the child's injuries. The circuit court found that the burns resulted in a "horrible looking blister" and mother failed to get immediate medical attention. The circuit court also found that the child's "lack of nourishment" contributed to her "lack of development." The evidence supports the circuit court's ruling that it was in the child's best interests to terminate mother's parental rights, and it did not err in terminating her parental rights under Code § 16.1-283(E)(i).

"When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo*, 68 Va. App. at 574 n.9; *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). We find that the circuit court did not err in terminating mother's parental rights

under Code § 16.1-283(E)(i); therefore, we do not need to reach the question of whether

mother's parental rights also should have been terminated under Code § 16.1-283(B) or (E)(iv).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

<em>Affirmed.</em>