COURT OF APPEALS OF VIRGINIA

Present: Judges Chaney, Callins and White
Argued at Alexandria, Virginia

UNPUBLISHED

NATHANIEL EDWARD GREEN, III

MEMORANDUM OPINION[*] BY
v.      Record No. 0149-23-4      JUDGE KIMBERLEY SLAYTON WHITE
NOVEMBER 21, 2023

EDITH H. RAMEIKA, ET AL.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Brett A. Kassabian, Judge

Mark H. Bodner for appellant.

Amanda M. Stone Swart (Sarah C. Bruns, Guardian ad litem for the
minor children; Livesay & Myers, P.C.; Marquis Law Group, on
brief), for appellees.


Nathaniel Edward Green, III ("father") appeals the final orders of adoption entered in favor

of Edith and Alan Sean Rameika concerning his two children, E.G. and C.G. Father argues that the

circuit court lacked jurisdiction to enter the orders because he was not "lawfully served" with the

adoption petitions. Father also asserts that the circuit court erred in finding that he withheld his

consent to the adoption contrary to the best interests of the children. Upon reviewing the record and

the parties' briefs, we conclude that the circuit court did not err. Accordingly, we affirm the

decision of the circuit court.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

We recite the evidence in the light most favorable to Edith and Alan Sean Rameika (grandparents), as they prevailed in the circuit court. *Geouge v. Traylor*, 68 Va. App. 343, 347 (2017). "Because the circuit court heard evidence *ore tenus*, its factual findings are 'entitled to the same weight accorded a jury verdict[ ] and . . . will not be disturbed on appeal unless plainly wrong or without evidence to support' them." *Id.* (quoting *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 44 (2014)).

Edith Rameika is the maternal grandmother to the two minor children, E.G. and C.G. Alan Rameika is their step-grandfather. Roxanne Green, who died October 1, 2017, was the children's biological mother, and Nathanial Green is their biological father.

Following Roxanne's death, father was incarcerated at different periods of time and suffered an overdose of narcotics. The children began residing with grandparents in August of 2018 when the Loudoun County Juvenile and Domestic Relations District Court (JDR court) granted grandmother joint legal custody and primary physical custody of the children due to evidence of father's substance abuse. The JDR court awarded joint legal custody and supervised visitation to father. The August 31, 2018 order required father to give grandparents and the court "at least 30 days advance notice of any relocation, including address and telephone number" pursuant to § 20-124.5 of the Code of Virginia.

The JDR court modified the visitation order two years later because father had "not exercised in-person visitation with the child[ren] since August of 2018, and . . . [f]ather's phone

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues father has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

visitation with the child[ren] ha[d] been inconsistent during the time." The JDR court ordered father to participate in reunification therapy and limited his visitation with the children to weekly telephone contact and in-person visitation at grandmother's discretion.

Following the JDR court order, father maintained sporadic contact with the children. Based on father's lack of contact with the children and his inability to take care of the children, grandparents in August of 2021 petitioned the court to adopt the children. Grandparents requested service of the adoption petition by order of publication. In the affidavit in support of the order of publication, grandparents alleged that father had had no contact with the children since February 2021. Father called or texted his children infrequently from 2018 without following through to coordinate visitation. While there were an increased number of calls from father in 2020, the calls ceased after December 2020.

Grandparents alleged that they made multiple attempts to contact father about the adoption. Specifically, they "made reasonable efforts to contact the birth father by email, seeking his consent to the adoption." Grandparents, however, did not receive a response from father. They also tried to locate father's residential address though a private investigator without success. Father had pending criminal charges, but grandparents determined through court records that father was not incarcerated at that time. Grandparents attempted to reach father at the address listed on his "criminal charging documents" to no avail. Despite their good faith efforts to locate father, his whereabouts at that time remained unknown.

The circuit court entered an order of publication, and the order notice ran in *The Washington Times* from October 7, 2021, through October 28, 2021. Because of a misspelling of father's name in the original publication, the circuit court entered a corrected order of publication on October 29, 2021. The corrected order notice ran in *The Washington Times* from November 23, 2021, to December 14, 2021. The circuit court clerk filed a certificate of compliance that stated the order of

- 3 -

publication was mailed to father's last known address and was posted on the front door of the courthouse.

Grandparents then filed a motion to enter a final order of adoption. Grandparents alleged father's consent was not required because father had not visited nor contacted the children for a period in excess of six months. Grandparents also contended that father waived his right to object and his right to consent to this adoption due to his failure to appear before the circuit court under the corrected order of publication.

Grandparents appeared before the circuit court on January 14, 2022.[2] The circuit court appointed a guardian ad litem (GAL) for the children. The circuit court continued the matter and ordered grandparents' counsel to make additional efforts to provide father with notice of the proceedings.

In response to the court's order, grandparents searched criminal records databases and found that father was incarcerated in Maryland in the Baltimore County jail on attempted murder charges.[3] Grandparents attempted personal service on father while he was in custody. Jail officials informed the process server that "the current document protocol [did] not allow for documents to be passed directly to inmates; that the inmate could review the documents and immediately return them, or they could be mailed to the inmate." The process server met with father in the attorney consultation room of the jail, "wherein glass separate[d] inmates from attorneys." "The drawer to pass documents was forbidden to be unlocked by the officer on duty." Father asked the process server to hold up the documents to the glass. After viewing three pages of the document, father refused to look at the remaining pages and ended the meeting. Father asked the process server to mail the

---

[2] A transcript, or a written statement of facts in lieu of a transcript, is not a part of the record.

[3] The Maryland court released father from incarceration in June 2022.

documents to him directly. Grandparents' counsel mailed the documents to father at the Maryland jail.

Due to father's incarceration, grandparents moved for the appointment of a GAL for father. The circuit court granted grandparents' motion and appointed Mark H. Bodner as father's GAL. The adoption petitions were transmitted to the GAL in accordance with Rule 3:5(c) and Code § 8.01-9(13).

Father's GAL filed a notice of special appearance to object to service upon father, and the circuit court conducted a hearing on the objection.[4] The circuit court found that grandparents properly served father with the adoption petitions on three occasions: by the order of publication that ran before father's incarceration, by the process server showing the petitions to father while he was in custody, and by the transmission of the petitions to father's GAL. The circuit court informed father of his right to appointment of counsel and continued the matter. Upon father's motion, the circuit court ultimately released Mr. Bodner as father's GAL and appointed him as father's counsel.

The parties convened for a two-day hearing November 28-29, 2022, on grandparents' adoption petitions. Father was represented by counsel and the circuit court permitted father to participate by telephone, as he was still incarcerated. Testimony presented during the hearing established that father had, at times, lived with the children and mother before mother's death in 2017. But father had not seen the children in person since 2018. Father failed to participate in the reunification therapy arranged by grandparents. Father had inconsistent telephone contact with the children, and his last attempt to contact the children was in 2021. In addition to having a history of felony convictions for firearms and narcotics possession resulting in incarceration, father had a

---

[4] The record does not include a transcript, or a written statement of facts in lieu of a transcript, from the hearing regarding whether grandparents properly served father with the adoption petition. Cited facts from the hearing come from the order in the record.

history of drug abuse, including an overdose, and had appeared to be intoxicated during telephone calls with the children.

When they came into grandparents' care, both children suffered from anxiety. C.G. suffered from post-traumatic stress disorder. The children received mental health treatment and became successful in school. Both children were doing "very well" with grandparents.

At the close of testimony, the circuit court granted grandparents' petitions for adoption under Code § 63.2-1205, finding that grandparents had established by clear and convincing evidence that father withheld his consent to the adoption contrary to the best interests of the children.[5] On December 28, 2022, the circuit court entered final orders of adoption. Father appeals.

ANALYSIS

I. Jurisdiction

On appeal, father argues the circuit court lacked jurisdiction to consider grandparents' petition because they did not properly serve him with the adoption petitions. First, father asserts that grandparents failed to use due diligence to locate him before attempting to perfect service by order of publication. Father also alleges that grandparents did not perfect service when the process server showed him three pages of the petition while he was incarcerated. Finally, father argues that grandparents did not perfect service by delivering copies of the petition to his GAL.[6]

Father's argument that grandparents failed to use due diligence to locate him before attempting to perfect service by order of publication is without merit in light of the record.

---

[5] The circuit court denied grandparents' petition for adoption under Code § 63.2-1202(H), finding that grandparents failed to prove by clear and convincing evidence that father had had no contact with the children for a six-month period before they filed the adoption petitions.

[6] As noted above, the record does not contain a transcript or a written statement of facts in lieu of a transcript of the hearing during which the circuit court determined that grandparents properly served father on three separate occasions. *See* Rule 5A:8(b)(4)(ii). Father did not raise any challenges to service during the final hearing, and thus waived his argument.

Specifically, grandparents attempted to contact father by email, hired a private investigator to locate father's residential address, looked at court records to see if father was incarcerated, and reached out to father at the address listed on his "criminal charging documents." None of these reasonable efforts elicited a response from father. As stated in the final custody and visitation order of August 2018 in accordance with Code § 20-124.5, father had an affirmative duty to update grandparents and the JDR court when his address changed. When he was arrested and incarcerated, father did not inform grandparents or the JDR court, complicating grandparents' efforts to notify him of the adoption petitions. We find that grandparents did use due diligence to locate father before attempting to perfect service by publication in *The Washington Times*.

Furthermore, under Code § 8.01-296(3), service by order of publication is appropriate when service cannot be effected under subdivisions 1 and 2 of Code § 8.01-296. In adoption matters, the circuit court may grant an adoption petition without consent "if personal service in unobtainable . . . after the completion of an order of publication." Code § 63.2-1203(2). Therefore, where the party petitioning for adoption has used due diligence, order of publication may be used to notify of a pending adoption. Given that grandparents attempted in different ways to personally serve father and personal service was unobtainable after exercising due diligence and without father's notice of change of address, this Court accepts service by order of publication, affirming the circuit court's personal jurisdiction over father.

Father's GAL made a special appearance in the circuit court to challenge service of the adoption petitions. The circuit court conducted a hearing on the issue and rejected this challenge. During oral argument, appellant invited this Court to base our ruling regarding service on the circuit court's order on the issue of service even though there is no transcript from the hearing. The circuit court found that "Nathaniel Green, III, has been duly served . . . on *three* occasions." (Emphasis added). Accordingly, this Court upholds the lower court's holding.

II. Consent for Adoption

Father also contends that the circuit court erred in holding that he withheld consent contrary to the best interests of the children. Father asserts that he had a lengthy relationship and strong bond with each child and that grandparents interfered with his relationship with the children.

"'[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by' the United States Supreme Court." *Geouge*, 68 Va. App. at 368 (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion)). "We consistently have held that to grant a petition for adoption over a birth parent's objection, there must be more than a mere finding that the adoption would promote the child's best interests." *Copeland v. Todd*, 282 Va. 183, 197 (2011) (citing *Malpass v. Morgan*, 213 Va. 393, 398-99 (1972)). To grant a petition for adoption over a birth parent's objection, "[w]e must determine whether the consequences of harm to the child of allowing the parent-child relationship to continue are more severe than the consequences of its termination." *Id.* at 198 (quoting *Doe v. Doe*, 222 Va. 736, 747 (1981)). Therefore, "Virginia's statutory scheme for adoption, including Code §§ 63.2-1205 and -1208, defines the best interests of the child in terms that require more expansive analysis than when the contest is between two biological parents." *Id.* at 199. As such, there are multiple factors, stated below, for review.

Code § 63.2-1205 states, in relevant part, as follows:

> In determining whether the valid consent of any person whose consent is required is withheld contrary to the best interests of the child, . . . the circuit court . . . shall consider whether granting the petition pending before it would be in the best interest of the child. The circuit court . . . shall consider all relevant factors, including the birth parent(s)' efforts to obtain or maintain legal and physical custody of the child; whether the birth parent(s) are currently willing and able to assume full custody of the child; whether the birth parent(s)' efforts to assert parental rights were thwarted by other people; the birth parent(s)' ability to care for the child; the age of the child; the quality of any previous relationship between the birth parent(s) and the child and between the birth parent(s) and

any other minor children; the duration and suitability of the child's present custodial environment; and the effect of a change of physical custody on the child.

The record demonstrates that the circuit court considered the evidence presented and the statutory factors in Code § 63.2-1205. In making its ruling, the circuit court determined that grandparents were more credible than father in their testimony. "'It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has discretion to accept or reject any of the witness' testimony.'" *Layman v. Layman*, 62 Va. App. 134, 137 (2013) (quoting *Street v. Street*, 25 Va. App. 380, 387 (1997) (en banc)). As such, "[t]his Court is bound by the credibility findings of the circuit court . . . and we will not disturb the ruling on appeal." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 339 (2013).

In reviewing the statutory factors, the circuit court noted that in 2018, father's visitation with the children was modified based on father's inconsistent contact with the children. Since 2018, however, father had "had absolutely no physical contact, no physical meetings with the children." The circuit court found that father took "no steps to provide evidence that he was substance abuse free," did not participate in any kind of visitation, and "had sporadic telephone visitation" with the children. Father failed to meet with a therapist or participate in reunification therapy. The circuit court further found that father could not assume custody of the children, as he was incarcerated at the time of the circuit court hearing and would continue to be "for some unknown period of time."

Despite father's assertions of a "lengthy relationship and strong bond" with his children, appellant's brief includes facts to the contrary. Father admits his last physical contact with his children was June or July 2018. Appellant's brief also references Dr. Hoffman's opinions of father's parenting ability as having "poor insight and judgment as it related to identifying the needs of the children."

The circuit court found no credible evidence that grandparents thwarted father's access to the children. Grandparents never prevented father from contacting the children and have permitted father's family to have a relationship with the children. On many occasions, father did not call the children when time was scheduled. Moreover, grandparents paid a reunification therapist to work with father to help reunite him with the children, but father did not participate in the services. The circuit court found that father's previous relationship with the children was the most "favorable factor," because before mother's death in 2017, he had cared for the children with mother, including helping with homework and feeding the children. Still, the circuit court held that "since [mother's] passing, [father's] contacts [were] at best, sporadic . . . by telephone and text and simply nonexistent since 2018." The circuit court also considered father's "significant substance abuse history" and multiple incarcerations. At the time of the circuit court hearing, the children were 12 and 10 years old and had been living with grandparents for almost four years. The circuit court found that it was "clear" that grandparents had "benevolence and genuine care for the welfare of these two children" since grandparents had ensured the children engaged in therapy and schooling.

Considering the record before us, the circuit court did not err in finding that the adoption was in the children's best interests. "When, as here, the circuit court reviewed the statutory factors, based its findings on evidence presented, and did not commit legal error, there is no basis for this Court to reverse its decision." *Geouge*, 68 Va. App. at 372.

### III. Appellee Attorney Fees and Costs

Finally, grandparents request an award of attorney fees and costs incurred in this appeal. "The decision of whether to award attorney's fees and costs incurred on appeal is discretionary." *Koons v. Crane*, 72 Va. App. 720, 742 (2021) (quoting *Friedman v. Smith*, 68 Va. App. 529, 545 (2018)). In making such a determination, the Court considers all the equities of the case. Rule

5A:30(b)(3).  After considering the record before us and all the equities of the case, we deny

grandparents' request for appellate attorney fees and costs.

## CONCLUSION

For the foregoing reasons, this Court affirms the circuit court's ruling.

*Affirmed.*